BREMER WHYTE BROWN & O'MEARA LLP
Rachel A. Mihai, State Bar No. 249716
rmihai@bremerwhyte.com
Patricia K. Gandy, State Bar No. 252824
pgandy@bremerwhyte.com
Keith Bremer, State Bar No. 155920
kbremer@bremerwhyte.com
20320 S.W. Birch Street
Newport Beach, California 92660
Telephone:  (949) 221-1000
Facsimile:  (949) 221-1001

Attorneys for Defendant,
PALISADES CHARTER HIGH SCHOOL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN MULLIGAN and ANDREW PARKE,<br><br>Plaintiffs,<br><br>vs.<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT; PALISADES CHARTER HIGH SCHOOL; ALBERTO M. CARAVALHO, in his official capacity as Superintendent of Los Angeles Unified School District; SCOTT M. SCHMERELSON, in his official capacity as Board Member of Los Angeles Unified School District; NICK MELVOIN, in his official capacity as Board Member of Los Angeles Unified School District; KELLY GONEZ, in her official capacity as Board Member of Los Angeles Unified School District; ROCIO RIVAS, in his official capacity as Board Member of Los Angeles Unified School District; SHERLETT HENDY NEWBILL, in her official capacity as Board Member of Los Angeles Unified School District; KARLA GRIEGO, in her official capacity as Board Member of Los Angeles Unified School District; TANYA ORTIZ FRANKLIN, in her official capacity as Board Member of Los Angeles Unified School District; JOSEPH RINGLEHAN, in his individual capacity as private citizen,<br><br>Defendants. | Case No. 2:26-cv-02133-CBM-JDE<br><br>Judge:  Hon. Consuelo B. Marshall<br><br>**DEFENDANT PALISADES CHARTER HIGH SCHOOL'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO RULES 12(b)(1) and 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**DATE:         June 23, 2026**<br>**TIME:          10:00 AM**<br>**COURTROOM:   8D**<br><br>Complaint Filed:  February 27, 2026 |

MOTION TO DISMISS

1670.001  4905-8521-8469.1

**TO THE HONORABLE COURT, ALL PARTIES AND ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on June 23, 2026, at 10:00 AM. before the Honorable Consuelo B. Marshall, in Courtroom 8D of the United States Courthouse for the Central District of California, located at 350 W. First St., Los Angeles, California, Defendant PALISADES CHARTER HIGH SCHOOL (hereinafter referred to as "Defendant" or "PCHS") will and does hereby move the Court to dismiss the Complaint filed by Plaintiffs KATHLEEN MULLIGAN and ANDREW PARKE (hereinafter referred to as "Plaintiffs") based on *Federal Rules of Civil Procedure*, Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted ("Motion").

This Motion is made following the conference of counsel pursuant to Rule 7-3, which took place on April 14, 2026. On April 9, 2026, counsel for PCHS contacted counsel for Plaintiffs via written correspondence alerting counsel of deficiencies in Plaintiffs' complaint and PCHS' intent to file a Motion to Dismiss. On April 13, 2026, counsel for PCHS provided Plaintiffs' counsel substantive correspondence detailing PCHS's arguments with regard to the defects in the Complaint in effort to facilitate a meaningful discussion for the April 14, 2026, conference. At the conference, Plaintiffs' counsel respectfully expressed their disagreement with PCHS's position and that no amendment to the Complaint to cure the alleged deficiencies would be provided and that it was their intent to sort out the issues during discovery. Counsel for PCHS and Plaintiffs' counsel were unable to come to a resolution which necessitates this Motion.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Patricia K. Gandy, all pleadings and papers on file with the Court in this action, and upon such further oral

///

///

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

2
MOTION TO DISMISS

1670.001 4905-8521-8469.1

and/or documentary evidence presented at the time of hearing of this Motion.

Dated:  April 24, 2026

BREMER WHYTE BROWN & O'MEARA LLP

By: _____

Rachel A. Mihai
Patricia K. Gandy
Keith Bremer
Attorneys for Defendant
PALISADES CHARTER HIGH SCHOOL

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

MOTION TO DISMISS

1670.001  4905-8521-8469.1

# TABLE OF CONTENTS

**Page**

1. INTRODUCTION ..................................................................................7

2. BACKGROUND ...................................................................................9

3. LEGAL STANDARD ..........................................................................10

4. ARGUMENT ......................................................................................12

    4.1    The Court Lacks Article III Subject Matter Jurisdiction In That the Plaintiffs Lack Standing to Bring This Action Against PCHS ..................12

    4.1.1 Count I Fails to Allege Facts Sufficient to Establish Causation ...............................................................................13

    4.1.2 Plaintiffs' Count II Likewise Fails to Establish Causation ...............................................................................14

    4.1.3 Plaintiffs' Count III Also Fails To Establish Causation ...............................................................................16

    4.1.4 Plaintiffs' Counts I-III Do Not Establish Redressability .........................................................................17

    4.1.5 Plaintiffs Do Not Have Standing to Sue for Injunctive Relief ....................................................................................18

    4.2    Plaintiffs Facial Challenges Fail to State Claims Upon Which Relief Can Be Granted Pursuant to FRCP Rule 12(b)(6)..........................................................................................19

        4.2.1    Plaintiffs Fail to State A Claim For Deprivation Parental  Rights—To Direct Medical Treatment..............................................................19

        4.2.2    Plaintiffs Fail to State A Claim of Deprivation Parental  Rights— To Direct Care & Upbringing.......................................................................20

        4.2.3    Plaintiffs Fail to State A Claim of Deprivation Parental  Rights— For Loss of Companionship & Familial Relationship........................22

        4.2.4    The 2019 Guidelines and Survive the Rational Basis Test.........................................................................23

        4.2.5    Plaintiffs' Deprivation of Procedural Due Process Rights Claim Fails As It is Derivitive of Their Substantive Due Process Claims.......................24

5. CONCLUSION ....................................................................................25

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

1670.001  4905-8521-8469.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Wright* (1984) 468 U.S. 737, 759 ...................................................... 12, 16, 17

*Am. Mfrs. Mut. Ins. Co. v. Sullivan* (1999) 526 U.S. 40, 49-50 ............................... 19

*Anspach v. City of Philadelphia* (2007) 504 F. 3d 256, 263 ................................... 20

*Ashcroft v. Iqbal* (2008) 556 U.S. 662, 677-678.................................................. 10, 11

*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555.................................. 11, 12, 19

*Caltex Plastics, Inc. v. Lockheed Martin Corp.* (2016) 824 F.3d 1156, 1159 .................................................................................................... 12

*Cetacean Community v. Bush* (2004) 386 F. 3d 1169, 1174 (9th Cir ................. 11, 13

*Chandler v. State Farm Mut. Auto. Ins. Co.*, (2010) 598 F. 3d, 1115, 1122 (9th Cir..................................................................................... 11

*City of Huntington Beach v. Newsom* (2025) 790 F.Supp.3d 812, 829........ 13, 19, 20

*Clapper v. Amnesty Int'l USA* (2013) 568 U.S. 398, 410-411 ................................. 13

*Conservation Force v. Salazar,* (2011) 646 F. 3d. 1240, 1242 (9th Cir.............. 11, 19

*Doe v. Franklin Square Union Free School Dist.* (2024) 100 F. 4th 86, 96 (2d Cir.) ..................................................................................... 13, 19

*Doe v. Horn*, (2024) 115 F. 4th 1083, 1107 n. 13 (9th Cir.)............................... 13, 19

*Election Integrity Project Cal., Inc. v. Weber* (2024) 113 F.4th 1072, 1081 ......................................................................................................... 12

*FDA v. All. For Hippocratic Med.* (2024) 602 US 367, 380.................................... 12

*Fields v. Palmdale Sch. Dist.*, (2005) 427 F. 3d 1197, 1208................................... 23

*Foote v. Ludlow School Committee*, (2025) 128 F. 4th 336 (1st Cir.) ........... 13, 14, 19

*Herrerra v. L.A. Unified Sch. Dist.*, (2021)18 F.4th 1156, 1158 ............................ 22

*Levine v. Vilsack*, (2009) 587 F. 3d 986, 991-992 (9th Cir ..................... 12, 14, 16, 21

*Mathews v. Eldridge*, (1976) 424 US 319 ............................................................... 24

*Sprewell v. Golden State Warriors* (2011) 266 F.3d 979, 988 ............................... 12

*Sprint Communs. Co., L.P. v. APCC Servs.* (2008) 554 U.S. 269, 288 .................. 17

*Troxel, 530 U.S. at p. 72* ......................................................................................... 21

1670.001  4905-8521-8469.1

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

**Statutes**

Federal Rules Civil Procedure 42 USC § 1983 ........................................................ 7

California Education Code § 220.5 ...................................................................... 8

**Rules**

Federal Rules Civil Procedure Rule 12(b)(1) ........................................ 9, 11, 18, 25

Federal Rules Civil Procedure 12(b)(6) ............................................... 9, 11, 19, 25

Federal Rules Civil Procedure 8(a)(2) …………………………………………..10

6

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

Plaintiffs Kathleen Mulligan and Andrew Parke (hereinafter "Plaintiffs") are parents of a student who attended Defendant Palisades Charter High School (hereinafter "Defendant" or "PCHS"), a charter school within Los Angeles Unified School District (hereinafter "LAUSD").  Plaintiffs' child, Dylan Parke, also known as Aria Parke, (herein referred to as "Dylan") attended PCHS from the fall of 2018 through June of 2022. Plaintiffs allege that the implementation of an LAUSD guideline with regard to the care and education of transgender students in effect during the time Dylan attended PCHS, deprived them of their Fourteenth Amendment due process rights pursuant to 42 USC § 1983, to direct the care and upbringing of their child, causing them damages including the ultimate loss of their child.  Plaintiffs' Complaint seeks monetary damages as well as declaratory and injunctive relief, attorneys' fees, and costs.[1]

On May 17, 2019, LAUSD issued Bulletin 6224.2 (hereinafter "2019 Guidelines"), titled, "Gender Identity and Students – Ensuring Equity and Nondiscrimination."  LAUSD reportedly issued the 2019 Guidelines due to its commitment to "providing a safe and supportive learning environment for all students and to ensuring that every student shall have equal access to the District's educational programs and activities." (Bulletin 6224.2 at 1.) (See Exhibit B of Declaration of Patricia K. Gandy ("Decl. of Gandy").) The stated purpose of the 2019 Guidelines was to "advise District staff regarding best practices relating to recognition of each student's gender identity consistent with the goals of reducing stigmatization and ensuring access for students." (*Id.*) Section II(A)(4) of the 2019

---

[1] Plaintiffs also bring a state law claim against the Defendant PCHS under Count VII of the Complaint for Violation of the California Public Records Act—Failure to Respond. (*Complaint* at ¶¶ 176-189.)

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

7
MOTION TO DISMISS

1670.001 4905-8521-8469.1

Guidelines included the following guidance for school personnel when communicating with a student's parent, legal guardian, or educational rights holder:

> School personnel should be aware that the student may not have disclosed their gender identity to their parents. When school personnel find it important to discuss a student's gender identity or expression with parents (if, for example, the student is being bullied based on their gender identity or expression), school personnel should consult and work closely with the student to assess the degree to which, if any, the parent is aware of the student's gender identity or expression and is supportive of the student, and school personnel shall take into consideration the safety, health and well-being of the student in deciding whether to disclose the student's gender identity or expression to parents. (*Id.* at 4-5.)

The 2019 Guidelines were effective at all times relevant to this matter.

On August 26, 2024, two years after Dylan graduated from PCHS, LAUSD issued Bulletin 6224.3. (hereinafter "2024 Guidelines"). (See Exhibit C of Decl. of Gandy.) In Section II(A)(4) of the 2024 Guidelines, LAUSD provided amended guidance for school personnel when communicating with a student's parent or guardian:

> School personnel should be aware that the student may not have disclosed their gender identity to their parents. Consistent with Education Code section 220.5, school personnel should obtain consent from the student prior to disclosing the student's gender identity unless otherwise required by state or federal law. If, for example, communication with the parent/legal guardian involves allegation of bullying or discrimination on the basis of the student's actual or perceived  gender identity or expression, school personnel should explain to the parent/legal guardian that state law prohibits bullying and discrimination on the basis of protected categories, like gender identity, whether actual or perceived, and the school is required to investigate and resolve these types of complaints. (*Id.* at 4.)

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

8
MOTION TO DISMISS

1670.001  4905-8521-8469.1

The 2024 Guidelines are currently in effect. LAUSD makes the full text of its official guidelines accessible to members of the public, as it is publicly posted at various locations on its website[2] without any restrictions on public access.

On February 27, 2026, Plaintiffs filed this suit to enjoin the implementation of the current 2024 Guidelines (not in effect at the time their only child attended PCHS) and for monetary damages. The suit, however, suffers from numerous jurisdictional deficiencies. The parents lack standing to sue, because they have failed to allege concrete or imminent injury traceable to the subject Guidelines policy or any conduct by Defendant PCHS. Along with the standing deficiencies, Plaintiffs' claims also lack merit in that there are no facts sufficient to support a deprivation of Fourteenth Amendment procedural or substantive due process rights was caused by the implementation of the subject policy Guidelines, or by any conduct of PCHS, as there are no facts that PCHS or its employees deprived Plaintiffs of their parental rights. There are no facts that PCHS deprived Plaintiffs of their right to direct the medical care or upbringing of their child; nor are there sufficient facts to establish that Defendant did anything to interrupt the familial relationship by allowing a student to use his / her chosen name and pronouns while at school. Therefore, PCHS respectively requests the Court grant Defendant PCHS' motion to dismiss without leave to amend under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## 2.   **BACKGROUND**

Dylan attended PCHS from the fall of 2018 through his graduation on June 9, 2022 (Compl., ¶ 17.) PCHS is a charter school within LAUSD. At all times relevant, PCHS, its staff, and the LAUSD staff working on PCHS campus during Dylan's time

---

[2] The 2024 Guidelines, "BUL-6224.3" that are accessible to all members of the public on LAUSD's website at the following locations:
https://generalcounsel.lausd.org/apps/pages/index.jsp?uREC_ID=4428912&type=d&pREC_ID=2667396&tota11y=true,
https://generalcounsel.lausd.org/apps/pages/index.jsp?uREC_ID=4428912&type=d&pREC_ID=2667397,  and
https://weareone.lausd.org/apps/pages/index.jsp?uREC_ID=4425745&type=d&pREC_ID=2680449.

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

9
MOTION TO DISMISS

1670.001  4905-8521-8469.1

at the school, followed the aforementioned Guidelines created by LAUSD with regards to transitioning students.

On or about May 6, 2020, towards the end of his sophomore year, and within the onset of the COVID pandemic, Dylan sent an electronic message to his school counselor, PCHS employee, Ms. Elva Pouya, advising her that he was in the middle of transitioning from male to female and that he requested from thereon he be referred to as Aria Parke and by pronouns she/her. (Compl., ¶ 49.) Ms. Pouya referred Dylan to the on-site psychological social worker, LAUSD employee, Defendant, Joe Ringlehahn. (Compl., ¶ 53.) Mr. Ringlehahn, as well as all the on-site social workers at all times relevant, were LAUSD employees, trained by LAUSD and who implemented LAUSD policies, including the subject 2019 Guidelines in effect when Dylan attended PCHS. As noted above, the 2019 Guidelines provided school personnel with discretion when deciding whether to disclose a child's expression of gender identity while at school to his or her parents. (Bulletin 6224.2 at pgs 4-5) Pursuant to the subject LAUSD Guidelines, Dylan was allowed to socially transition while he attended Defendant PCHS.

Dylan graduated from Defendant PCHS in June of 2022. On or about March 1, 2024, almost two years after leaving PCHS, Dylan tragically took his own life. (Compl., ¶ 9.)

Plaintiffs allege, without proper factual support, that Defendants implementation of the 2019 Guideline allowing Dylan to socially transition while at school, and Defendants' alleged failure to affirmatively inform Plaintiffs of the same, deprived them of their parental rights to direct the care and development of their child.

## 3. <u>LEGAL STANDARD</u>

Under Federal Rules of Civil Procedure 8(a)(2), a pleading "must" contain "a short and plain statement of the claim showing that the pleader is entitled to relief." (*Ashcroft v. Iqbal* (2008) 556 U.S. 662, 677-678.) Although Rule 8's

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

10
MOTION TO DISMISS

1670.001 4905-8521-8469.1

pleading standard does not require "detailed factual allegations," Rule 8 requires more than "an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id. at* 678. A pleading "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555.)

Under 12(b)(1) of the Federal Rules of Civil Procedure, the district court must dismiss a complaint for "lack of subject matter jurisdiction." When a plaintiff lacks standing under Article III "case or controversy" requirement, federal courts lack subject matter jurisdiction over the suit, and the case must be dismissed. (*Cetacean Community v. Bush* (2004) 386 F. 3d 1169, 1174 (9th Cir.)) Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. (See *Chandler v. State Farm Mut. Auto. Ins. Co.*, (2010) 598 F. 3d, 1115, 1122 (9th Cir.))

Under Federal Rules of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. (Fed. Rules Civ. Proc., rule 12(b)(6), 28 U.S.C.) A complaint may be dismissed under FRCP 12(b)(6), only when it fails to (1) state a cognizable legal theory or (2) fails to allege sufficient factual support for its legal theories. (*Conservation Force v. Salazar,* (2011) 646 F. 3d. 1240, 1242 (9th Cir*.).*) In accordance with the pleading requirements of Federal Rules of Civil Procedure 8(a)(2), to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. (*Id*.) The plausibility standard asks for more than the "sheer possibility" that a defendant engaged in unlawful conduct. (*Ashcroft v. Iqbal* (2008) 556 U.S. 662, 678.) If the plaintiffs pleads facts that are "merely consistent" with a defendant's liability, the plaintiffs have not "nudged their claims across the line from conceivable to plausible," and "their complaint must be dismissed." (*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544,

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

11
MOTION TO DISMISS

1670.001 4905-8521-8469.1

557-570.) Similarly, if "the allegations of the complaint are 'more likely explained by lawful… behavior,' then "the complaint will fall short of plausibly alleging a legal violation." (*Election Integrity Project Cal., Inc. v. Weber* (2024) 113 F.4th 1072, 1081, citing *Bell Atlantic Corp v. Twombly* (2007) 550 U.S. 544, 557.) The court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. (*Sprewell v. Golden State Warriors* (2011) 266 F.3d 979, 988.) Courts "must accept all well pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." (*Caltex Plastics, Inc. v. Lockheed Martin Corp.* (2016) 824 F.3d 1156, 1159.)

## 4.   ARGUMENT

### 4.1 The Court Lacks Article III Subject Matter Jurisdiction In That the Plaintiffs Lack Standing to Bring This Action Against PCHS

To have standing to maintain this suit against PCHS, Plaintiffs would have to meet all three requirements of Article III: (1) that plaintiffs had suffered an injury in fact that was concrete and particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged conduct; and (3) that the injury is likely to be redressed by a favorable court decisions. (*Levine v. Vilsack*, (2009) 587 F. 3d 986, 991-992 (9th Cir.)). Because Plaintiffs cannot establish any of these requirements necessary for Article III standing, the Court should dismiss this Complaint for lack of jurisdiction. Even if the Court finds that the Plaintiffs have suffered an injury, that alleged injury is not the result of any unlawful conduct by PCHS that could be traceable to the alleged injury. Causation requires a plaintiff to establish that the plaintiff's injury was likely caused by or will likely be caused by the defendant's conduct. The line of causation between the illegal act and the injury, the "'links in the chain of causation,'" must not be too attenuated or too speculative, as the causation requirement precludes speculative links. (*FDA v. All. For Hippocratic Med.* (2024) 602 US 367, 380, citing *Allen v. Wright* (1984) 468 U.S. 737, 759 and

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

1670.001 4905-8521-8469.1

*Clapper v. Amnesty Int'l USA* (2013) 568 U.S. 398, 410-411.) Thus, Plaintiffs lack Article III standing. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy" and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Cetacean Cmty*., 386 F. 3d at p. 1174.)

### 4.1.1 Count I Fails to Allege Facts Sufficient to Establish Causation

In Count I, Plaintiffs allege that Defendant's "adoption and enforcement of the 2019 Guidelines authorized school officials," to "engage in gender-affirming care," which Plaintiffs allege to be "medical care," without parental consent, "directly and indirectly interfering with Plaintiffs' constitutionally protected Parental Rights." (Compl., ¶¶ 113, 117, and 118.) Here, Plaintiffs allege that this gender-affirming care, i.e. social transitioning, is "medical care." However, the gender-affirming care that Plaintiffs have described in their Complaint is not recognized by courts as medical care since actions such as "[c]hanging pronouns" and "names" do "not require the involvement of any medical personnel or procedure." (See this Court's ruling on Defendants Motion to Dismiss in *City of Huntington Beach v. Newsom* (2025) 790 F.Supp.3d 812*, 829 citing *Doe v. Horn*, (2024) 115 F. 4th 1083, 1107 n. 13 (9th Cir.); *Doe v. Franklin Square Union Free School Dist.* (2024) 100 F. 4th 86, 96 (2d Cir.); and *Foote v. Ludlow School Committee*, (2025) 128 F. 4th 336 (1st Cir.).)

Since the gender-affirming care that PCHS allegedly provided to Dylan is not recognized as medical care, Plaintiffs' parental rights to make medical decisions for their child were not implicated and, thus, Plaintiffs do not have standing to claim PCHS' alleged implementation of the 2019 Guidelines caused Plaintiffs to be deprived of their parental rights. Further, as this Court has recognized "[n]ondisclosure is not 'medical treatment'."(*Id.*at 831.) And, although a policy may result in social transition without parental consent, without something more that "transforms the alleged conduct into a medical intervention," parents cannot plead a plausible theory that a school's policy allows schools to violate their right to refuse

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

13
MOTION TO DISMISS

1670.001  4905-8521-8469.1

medical treatment. (*Id*, citing *Foote v. Ludlow Sch. Comm.* (2025) 128 F.4th 336, 349- 350.)

In Count I, Plaintiffs also allege that Defendants deprived them of their parental rights to make medical decisions by undermining and/or contradicting "Plaintiffs' efforts to provide Dylan with appropriate private mental healthcare, exacerbating Dylan's psychological distress and depression, which ultimately resulted in his suicide." (Compl., ¶ 114.) Here, Plaintiffs do not provide any factual support for their alleged "efforts" to provide Dylan with "appropriate private mental healthcare" or that Dylan had "psychological distress and depression" while he attended PCHS. Additionally, Plaintiffs do not assert any facts that plausibly demonstrate that Defendants' policies, to any extent, exacerbated Dylan's alleged psychological distress and depression. Furthermore, there was an approximate two year time gap from the date that Dylan graduated from PCHS on June 9, 2022, to the date that he committed suicide on March 1, 2024, yet Plaintiffs assert no facts regarding their relationship with Dylan during this time period, or anything else about Dylan's life then, including any facts relating to the circumstances surrounding Dylan's suicide. Plaintiffs thus do not assert any facts that plausibly demonstrate that any of the Defendant's acts "ultimately resulted in his suicide." and as such caused Plaintiffs' profound loss and claimed damages. Count I clearly fails to establish that Plaintiffs' injuries were concrete and particularized or that any conduct by PCHS was traceable to Plaintiffs' alleged injuries as required to establish Article III standing. (*Levine*, 587 F. 3d p. 991-992,)

### 4.1.2 Plaintiffs' Count II Likewise Fails to Establish Causation

In Count II, Plaintiffs allege that the PCHS deprived them of their parental rights to direct the care and upbringing of their child by allowing Dylan to socially transition at school, without their knowledge and consent, which they allege, without support, caused "severe emotional distress and eroded familial trust and the parent-child relationship." (*Id.* at ¶¶ 125 and 127.)  However, again Plaintiffs fail to allege

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

14
MOTION TO DISMISS

1670.001  4905-8521-8469.1

facts to support this claim of distress while acknowledging that Dylan identified as transgender *prior* to first approaching PCHS about his desire to transition at school, including by noting he was in the middle of said transition when he first contacted PCHS and "further advised [her] that his new name was 'Aria,' that his pronouns were 'she/her'. (Compl., ¶ 49.) Moreover, the Complaint does not contain even a single allegation of an instance in which Ms. Pouya, or any PCHS employee, forced Dylan into identifying as transgender at any time.

Additionally, the Complaint asserts that Dylan's first contact with LAUSD employee, Mr. Ringlehan, the on-site psychological social worker, occurred sometime between May 12, 2020, and May 20, 2020, which is at least approximately six days after Dylan had initiated contact with PCHS to inform it of his transgender identity (*Id.* at ¶¶ 54 and 58.) Plaintiffs allege that Mr. Ringlehan told Dylan that he did not need his parents' permission. (emphasis added)" (*Id.* at ¶ 58.) Here, the Complaint offers no context for this allegation.

Furthermore, the Complaint also alleges that LAUSD employee, Grant Smith, Dylan's 504 Coordinator, "forwarded Dylan a link" on October 12, 2020, which is approximately 5 months after Dylan began socially transitioning at school. (*Id.* at ¶¶ 72 and 73.) Plaintiffs allege that the link that Mr. Smith forwarded to Dylan was to the LA LGBTQ Center's youth transitional housing webpage via a message that "only included the Link and is believed to have been provided in response to a previous in person or written communication between Dylan and Mr. Smith." (*Id.* at ¶ 73) Although Plaintiffs allege that Mr. Ringlehahn's comment about not needing to inform his parents, and Mr. Smith sending Dylan a link to alternative housing deprived them of their constitutional rights, the Complaint fails to include any facts surrounding these alleged exchanges including any insight into these LAUSD employees motive or the context surrounding the same. These allegations contained in the Complaint are mere conclusory statements of alleged speculative wrongdoing that fails to meet the causation standard for pleading the same. Thus, any alleged

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

15
MOTION TO DISMISS

1670.001 4905-8521-8469.1

erosion of Plaintiffs' parent-child relationship with Dylan is not sufficiently supported as pled, as it contains insufficient factual support to establish causation by any conduct attributable to Defendant PCHS. Count II clearly fails to establish that Plaintiffs' injuries were concrete and particularized or that any conduct by PCHS was traceable to Plaintiffs alleged injuries as required to establish Article III standing. (*Levine*, 587 F. 3d p. 991-992,)

### 4.1.3 Plaintiffs' Count III Also Fails To Establish Causation

In Count III, Plaintiffs allege that the Defendant deprived them of their parental rights to companionship and familial relationship by "actively encouraging" Dylan's "separation from his parents." Plaintiffs allege that Mr. Ringlehan's aforementioned statement to Dylan that Dylan did not need his parents' permission and Mr. Smith "forward[ing]" Dylan a link to alternative housing for transgender youth were two of the "most egregious" examples of the Defendants' conduct "in furtherance of separating Dylan from his parents." (*Id.* at ¶ 135.)

However, as noted above, there is nothing in Plaintiffs' allegations that establish that the alleged injuries were concrete and particularized or that any conduct by PCHS was traceable to Plaintiffs alleged injuries as required to establish Article III standing. (*Levine*, 587 F. 3d p. 991-992. )There is nothing within Plaintiffs' allegations that shed light on any PCHS or LAUSD employees familiarity with Dylan and Dylan's family dynamics. At best, however, the statement attributed to Mr. Ringlehan and the link emailed to Dylan by Mr. Smith, offer no more than the "sheer possibility" that a defendant engaged in unlawful conduct or is "merely consistent" with a defendant's liability and, thus, stops short of the line between possibility and plausibility of entitlement to relief. (See *Allen v. Wright*, at p. 759.) Furthermore, although Plaintiffs allege that the Defendant actively encouraged Dylan's separation from his parents and that this encouragement directly "interfered with Plaintiffs' fundamental right" by "undermining trust and intimacy inherent in the parent-child relationship," Plaintiffs' Complaint is completely absent of any

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

16
MOTION TO DISMISS

1670.001  4905-8521-8469.1

factual allegations that demonstrate how the gender-affirming care that the Defendant allegedly provided to Dylan undermined the parent-child relationship. (*Compl..* at ¶ 133.)  Here, the Complaint does not include any allegations that provide insight into the dynamics of the parent-child relationship between Dylan and his parents, prior to the implementation of the 2019 Guidelines or at any time relevant including up and until Dylan's tragic death almost two years after he left PCHS. Since the Complaint is absent of any information demonstrating the dynamics of the parent-child relationship between Dylan and his biological parents prior to the date that he allegedly first sought to socially transition while attending PCHS, the Complaint is noticeably without a baseline to assist in determining whether the parent-child relationship was undermined and, if so, the cause, and extent, of the undermining that occurred. Since the Complaint alleges that the Defendant's active encouragement of Dylan's separation from his parents interfered with their parental rights, but the Complaint is without any factual allegations to demonstrate how the Defendant's alleged encouragement undermined the dynamics of the parent-child relationship between Dylan and his parents at any point in time, Plaintiffs' allegations again, at best, offer no more than the "sheer possibility" that a defendant has engaged in unlawful conduct or is "merely consistent" with a defendant's liability and, thus, falls short of the line between possibility and plausibility of entitlement to relief.  (See *Allen v. Wright*, at p. 759.)  Thus, Plaintiffs have not asserted any facts that plausibly demonstrate that the alleged gender-affirming care provided by the Defendant, including what the complaint has referred to as the two "most egregious" examples of such acts, caused the parent-child relationship between Dylan and his biological parents to be undermined.

### 4.1.4 Plaintiffs' Counts I-III Do Not Establish Redressability

As noted above, to establish Article III standing, the Plaintiff must show that the injury is likely to be redressed by a favorable court decision. (*Levine* at p. 991-992.) Causation and redressability are "flip sides of the same coin." (*Sprint Communs. Co.,*

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

17
MOTION TO DISMISS

1670.001  4905-8521-8469.1

*L.P. v. APCC Servs.* (2008) 554 U.S. 269, 288.) Accordingly, since Plaintiffs' insufficiently pled allegations have not made it plausible that PCHS caused them to suffer any deprivation of their fundamental parental rights under the Fourteenth Amendment, awarding Plaintiffs any of their requested judicial relief would not redress any of their alleged injuries and is therefore unwarranted.

### 4.1.5 **Plaintiffs Do Not Have Standing to Sue for Injunctive Relief**

The Complaint alleges that Plaintiffs biological son and "only child" committed suicide on March 1, 2024. (Compl. ¶¶ 9 and 17.) The Complaint also includes that the 2024 Guidelines were issued on or about August 26, 2024. (*Id.* at ¶ 46.) superseding the 2019 Guidelines in effect during Dylan's time at PCHS. Based on the allegations contained in the Complaint, the death of Plaintiffs' only child predated the issuance of the 2024 Guidelines by at least five months, and his graduation from PCHS on June 9, 2022, predated the implementation of the 2024 Guidelines by over two years. (*Id.* at ¶ 83.) However, Plaintiffs are seeking a "permanent injunction enjoining Defendants from continuing to implement or enforce the [2024 Guidelines]." (*Id.* at ¶ 104.)

Plaintiffs do not, and cannot, demonstrate any of the requirements to establish standing in connection with the issuance and/or implementation of the 2024 Guidelines. Plaintiffs cannot demonstrate that they have or will likely suffer an injury in fact from the 2024 Guidelines because the 2024 Guidelines were implemented after their only child had been deceased for almost half a year and after he had graduated by almost two years. As such, without an injury to Plaintiffs, they cannot demonstrate causation and redressability. Thus, Plaintiffs do not have standing to sue for an injunction of the 2024 Guidelines. For the reasons noted above, Plaintiffs lack standing to bring this action against PCHS and has such this motion should be granted in its entirety pursuant to FRCP 12(b)(1).

///

///

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

18
MOTION TO DISMISS

1670.001 4905-8521-8469.1

**4.2** **Plaintiffs Facial Challenges Fail to State Claims Upon Which Relief Can Be Granted Pursuant to FRCP Rule 12(b)(6)**

To state a claim for relief in an action brought under 42 USC § 1983, a plaintiff must show that (1) they were "deprived of a right secured by the Constitution or laws of the United States," and (2) "the alleged deprivation was committed under color of state law." (*Am. Mfrs. Mut. Ins. Co. v. Sullivan* (1999) 526 U.S. 40, 49-50). Under FRCP Rule 12(b)(6) a district court properly dismisses a complaint for failure to state a claim upon which relief may be granted if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" (*Conservation Force v. Salazar*, (2011) 646 F. 3d 1240, 1242 (9th Cir.).)  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." (*Bell Atlantic Corp. v. Twombly*, (2007) 550 U.S. 544, 570.) Here, Plaintiffs claims fail to allege facts sufficient to state a claim for relief.

**4.2.1** **Plaintiffs Fail to State A Claim For Deprivation Parental Rights—To Direct Medical Treatment**

In Count I, Plaintiffs argue Defendants allowing Dylan to transition socially at school without their consent deprived of their right to make medical decisions for Dylan. (Compl. ¶¶ 107- 119.) Despite Plaintiffs' allegations in the Complaint, and as noted above, courts are clear that gender-affirming care of the type allegedly provided to Dylan, is not considered medical care. (See this Court's ruling on Defendants Motion to Dismiss in *City of Huntington Beach v. Newsom* (2025) 790 F.Supp.3d 812, 829 citing *Doe v. Horn*, (2024) 115 F. 4th 1083, 1107 n. 13 (9th Cir.); *Doe v. Franklin Square Union Free School Dist.* (2024) 100 F. 4th 86, 96 (2d Cir.); and *Foote v. Ludlow School Committee*, (2025) 128 F. 4th 336 (1st Cir.).) As mentioned above, actions such as "[c]hanging pronouns" and "names" do "not require the involvement of any medical personnel or procedure" or involve any type of "intrusions upon the bodily integrity of the child." (*Id.* at 829- 833.) Furthermore,

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

19
MOTION TO DISMISS

1670.001 4905-8521-8469.1

"[n]ondisclosure is not 'medical treatment'" and, although a policy may result in social transition without parental consent, without something more that "transforms the alleged conduct into a medical intervention," parents cannot plead a plausible theory that a school's protocol allows schools to violate their right to refuse medical treatment. (*Id.* at 831.) For all of the aforementioned reasons, based on the content of their pleadings, Plaintiffs' constitutional parental right to make medical decisions for their child is not implicated in the Complaint as pled, and, therefore, Plaintiffs fail to state a claim under the Fourteenth Amendment for deprivation of parental rights to make medical decisions for their child.

### 4.2.2  Plaintiffs Fail to State A Claim of Deprivation Parental Rights— To Direct Care & Upbringing

For Count II, Plaintiffs argue that Defendant's enforcement of the 2019 Guidelines which authorized schools to allow students to socially transition at school and gave school officials discretion on whether to inform parents of the same, was "in direct violation of Plaintiffs' fundamental rights to direct Dylan's care and upbringing." (*Id.* At 124.)

In cases in which parents have alleged an infringement of their constitutional right to direct the upbringing of their child, courts have found parental rights to be implicated when there is coercive or restraining conduct[3]. (*Anspach v. City of*

[3] See, e.g., Anspach v. City of Philadelphia (2007) 504 F. 3d 256, 263-265, citing *Doe v. Irwin* (1980) 615 F.2d 1162, 1168, (In Meyer v. Nebraska, [262 U.S. 390, 43 S. Ct. 625,67 L. Ed. 1042 (1923)] the state forbade the teaching of foreign languages to pupils who had not passed the eighth grade. The Court held the statute not reasonably related to any end within the competency of the state and violative of parents' Fourteenth Amendment right to liberty. In Pierce v. Society of Sisters, [268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925)] the statute required all children between the ages of 8 and 16 to attend public schools. The Court found that the law unreasonably interfered with the liberty interest of parents to direct the upbringing and education of their children, including the right to send them to accredited private schools. Again in Wisconsin v. Yoder, [406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972)] the law in question made school attendance compulsory. The Court

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

20
MOTION TO DISMISS

1670.001 4905-8521-8469.1

*Philadelphia* (2007) 504 F. 3d 256, 263)  However, Plaintiffs' allegations do not demonstrate that any PCHS employee, or for that matter, LAUSD personnel, engaged in any coercive or restraining conduct related to Dylan's transgender identity. First, based on the allegations that are contained in the Complaint, Dylan had identified as transgender, had decided to come out publicly as transgender, and was "in the middle of coming out publicly as transgender" prior to the May, 2020 date that Plaintiffs allege that Dylan first notified PCHS of his desire to socially transition. (Compl., ¶ 49.) Based on these allegations, it is apparent that Dylan had identified as transgender before the time that he initiated contact with PCHS to socially transition at school.  Moreover, the Complaint does not contain even one allegation of conduct by PCHS that coerced Dylan into identifying as transgender at any time. The Complaint also does not allege any conduct by PCHS prior to May 6th, 2020 that anyone at PCHS had any impact on Dylan's decision to come out publicly as transgender.

As aforementioned, the Complaint does not include any allegations that provide insight into LAUSD defendants alleged interactions with Dylan and how the same impacted Plaintiffs' relationship with their child. Therefore, based on the allegations that are contained in the Complaint, Plaintiffs have failed to demonstrate that PCHS or LAUSD engaged in coercive conduct related to Dylan's transgender identity.

Furthermore, where only the child, rather than state actors, decides whether the child socially transitions, parental rights under the Constitution are not implicated because the state has not replaced the parent as the decision-maker regarding what serves the child's best interests. *(See Troxel, 530 U.S. at p. 72.)* Accordingly, since it is apparent from the Complaint that Dylan, rather than any state actors, decided

---

held that Amish parents' First Amendment rights to the free exercise of their religion were infringed by the attendance requirement.

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

21
MOTION TO DISMISS

1670.001 4905-8521-8469.1

whether he socially transitioned (*Compl.* ¶ 49.), Plaintiffs' Complaint, as pled, fails to allege facts sufficient to establish that their parental rights are implicated as the Defendant did not replace the Plaintiffs as the decision-maker regarding what served Dylan's best interests.

### 4.2.3  Plaintiffs Fail to State A Claim of Deprivation Parental  Rights— For Loss of Companionship & Familial Relationship

Plaintiffs allege that, through the implementation of the 2019 Guidelines, Defendants have intentionally or recklessly deprived them of this parental right to companionship and a familial relationship with their child. (*Id.* at ¶ 138.)

In cases in which a parent alleges a Fourteenth Amendment deprivation of parental rights involving a familial relationship, a deliberate indifference standard is applied. (*Herrerra v. L.A. Unified Sch. Dist.*, (2021)18 F.4th 1156, 1158) A defendant must "recognize the unreasonable risk and actually intend to expose the" victim "to such risks without regard to the consequences to the" victim. (*Id.*) A state actor ultimately "needs to know that something is going to happen but ignore the risk and expose" the victim to the risk. (*Id.* at 1158-59). For instance, in *Herrerra v. L.A. Unified Sch. Dist.*, a child's parents claimed that the failure of a school aide to protect their autistic child during a school outing from drowning in a swimming pool implicated their parental rights under the Fourteenth Amendment. (*Id.* at 1161.) According to the Ninth Circuit's holding, the school aide did not act with deliberate indifference because the aide was not aware of any immediate danger that was posed to the child, who the aide thought was in a locker room instead of a pool at the time of the incident. (*Id.* at 1163-1164.) The Ninth Circuit thus found no evidence that the risk to the child was subjectively recognized by the aide and that a reasonable jury could not conclude that a violation of the parents' Fourteenth Amendment right had occurred. (*Id.* at 1163-1164.)

In the instant case, Plaintiffs do not plead any facts that the Defendant, through any employee of PCHS, recognized an unreasonable risk to Dylan and actually

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

22
MOTION TO DISMISS

1670.001 4905-8521-8469.1

intended to expose Dylan to such risks without regard to the consequences to Dylan. At best, any such allegations are speculative without any other content, and, accordingly, do not pass the plausibility threshold. The Complaint fails to allege any facts as to the relationship between Dylan and his parents, prior to or after socially transitioning while at PCHS, or in the two years after he left PCHS before his unfortunate death; or any facts as to how any conduct by PCHS affected the familial relationship. For all of the aforementioned reasons, based on the content of their pleadings, Plaintiffs constitutional parental right to companionship and familial relationship is not implicated in the Complaint as pled, and, as such, Plaintiffs have failed to state a claim.

### 4.2.4  The 2019 Guidelines and Survive the Rational Basis Test

Since the 2019 Guidelines, in effect at the time Dylan attended PCHS, did not implicate Plaintiffs' fundamental parental rights under the Constitution, the 2019 Guidelines are subject to rational basis review, which requires only a "reasonable relation to a legitimate state interest." (*Fields v. Palmdale Sch. Dist.*, (2005) 427 F. 3d 1197, 1208.) As included in the 2019 Guidelines, both federal and state law provide that "public schools have an affirmative obligation to combat bias, including sex discrimination or sexism on the basis of actual or perceived gender/sex, including "gender identity and gender expression," a person's "sexual orientation, or a person's association with a person or group with one or more of these actual or perceived characteristics." (Bulletin 6224.2 at 1.)

Here, the legitimate federal and state "interest" was to combat bias, including discrimination or sexism on the basis of actual or perceived gender identity and gender expression. Also, the 2019 Guidelines were based on a "commit[ment] to providing a safe and supportive learning environment for all students and to ensuring that every student shall have equal access to the District's educational programs and activities." (*Id.*) Here, LAUSD's legitimate "interest" was to ensure that every student had access to a safe and supportive learning environment with equal access to

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

23
MOTION TO DISMISS

1670.001 4905-8521-8469.1

LAUSD's educational programs and activities. And the 2019 Guidelines were reasonably related to LAUSD's legitimate interest because they provided school personnel with the discretion to choose whether to disclose a student's gender identity or expression by taking "into consideration the safety, health and well-being of the student." (Guidelines § II(A)(4) of Bulletin 6224.2.) Thus, since the 2019 Guidelines were reasonably related to LAUSD's legitimate interest, the 2019 Guidelines would pass rational basis review; and PCHS' implementation of the same during the subject time period was equally legitimate.

### 4.2.5  Plaintiffs' Deprivation of Procedural Due Process Rights Claim Fails As It is Derivitive of Their Substantive Due Process Claims

Procedural due process claims rooted in the 14th Amendment require the government actor to follow fair, established procedures (typically notice and a hearing) prior to depriving individuals of life, liberty or property. (*Mathews v. Eldridge*, (1976) 424 US 319.) These claims challenge how a decision was made, rather than the substance of the rule or in this case the Guidelines. (*Id*.)  The courts are required to use a balancing test that accounts for the interests of the affected individual, the interests of the government in limiting procedural burdens and the risk of erroneously curtailing individual interests under the existing procedures as well as how much additional procedure would help reduce the risk of error. (*Id*.)

Here, Plaintiffs allege that implementation of the 2019 Guidelines, without notifying or obtaining consent from them as Dylan's parents or an ability to be heard in advance of the same, effectively stripped them of their decision-making authority in violation of their procedural due process rights. However, as discussed above, Plaintiffs' substantive due process rights were not implicated by the 2019 Guidelines or the implementation of the same. Accordingly, Plaintiffs' procedural due process claim fails because it is derivative of their deficient substantive due process claims.

///

///

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

24
MOTION TO DISMISS

1670.001 4905-8521-8469.1

## 5.   CONCLUSION

Based on the foregoing reasons, Defendant Palisades Charter High School respectfully requests the Court dismiss Counts I, II, III, and IV, against Palisades Charter High School, pursuant to Rules 12(b)1 and 12(b)(6).  Plaintiffs' allegations against Palisades Charter High School are unmeritorious as plead as Plaintiffs attempt to assert each cause of action against every Defendant, despite obvious lack standing and of factual support.  As such, Plaintiffs have failed to plead facts sufficient to show they are entitled to relief for these Counts.

Dated:  April 24, 2026

BREMER WHYTE BROWN & O'MEARA LLP

By: _____

Rachel A. Mihai
Patricia K. Gandy
Keith Bremer
Attorneys for Defendant
PALISADES CHARTER HIGH SCHOOL

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

25
MOTION TO DISMISS

1670.001  4905-8521-8469.1

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Palisades Charter High School, certifies that this brief contains 25 pages, which complies with the page limit set by the Judge Marshall's Standing Order, Section 7(c).

Dated:  April 24, 2026                    Respectfully submitted,

BREMER WHYTE BROWN & O'MEARA LLP

By:  _____
     Rachel A. Mihai
     Patricia K. Gandy
     Keith Bremer
     Attorneys for Defendant
     PALISADES CHARTER HIGH SCHOOL

MOTION TO DISMISS

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

1670.001  4905-8521-8469.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April 2026, a true and correct copy of the foregoing **PALISADES CHARTER HIGH SCHOOL'S MOTION TO DISMISS** was electronically delivered to California Courts E-Filing system for filing and service to all parties of record.

*Kristi Lothian*
Kristi Lothian

*This document was filed electronically pursuant to C.R.C.P. 121 § 1-26.  The original signed Certificate of Electronic Filing is on file at the offices of Bremer Whyte Brown & O'Meara, LLP.*
1.

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

27
MOTION TO DISMISS

1670.001  4905-8521-8469.1